IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:

Algits Incorporated dba NinjaBE

Case No.21-13888

Debtor

Chapter 11

\* \* \* \* \* \* \* \* \* \* \* \*

## DEBTOR'S AMENDED CHAPTER 11, SUBCHAPTER V PLAN

Algits, Incorporated, the above-captioned debtor and debtor-in-possession (the "Debtor"), proposes the following Plan of Liquidation under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code").A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing.Please refer to Scheduling Order for important information regarding Plan voting and objection deadlines.**

Article I.Source of Payments

The Debtor has ceased operation and, with the sale of the Intellectual Property, has liquidated all of disclosed assets of known liquidation value.  The sole assets of the Debtor, and the source for payments under the plan are:
- $80,158.16 held in an account maintained by the Subchapter V Trustee (the "Trustee). These funds represent the ending balance of the Debtor's operating bank account plus a small refund from the cancellation of personal property and liability insurance.
- $205,022.91 in accounts maintained at EagleBank., the Debtor's secured lender ("EagleBank")
- $100.00 paid from the Debtor's former principal for the purchase of the Debtor's intellectual property, including but not limited to the names "NinjaBE ®", NinjaBE: Feel the Fun! ®", "NinjaFit ®" and "Algits" and the copyrighted NinjaBE character (the "Intellectual Property").

Article II. Plan Term

The term of this Plan begins on the date of confirmation of this Plan and endsafter disbursement of the accounts of the debtor, and net proceeds from the sale of the assets to the appropriate parties, including the disbursement to allowed administrative claims to the appropriate parties from the net proceeds from the sale of the business assets.

Article III. Sale of Intellectual Property

The former principal of the Debtor has agreed to purchase the Intellectual Property of the Debtor for the sum of $100,00, such funds to be paid to the Trustee in advance of the confirmation hearing. Upon entry of a non-appealable order confirming this Plan, the Debtor will execute a limited Bill of Sale transferring the rights to the Intellectual Property to the former principal. The Debtor believes the Intellectual Property is of limited value to any party other than the Debtor and the sale is in the best interest of the Debtor and its creditors.

EagleBank retains a lien of the Intellectual Property and the proceeds of the sale of this asset will be paid to EagleBank.

Article IV. General Distributions Under Plan

The Plan provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

The Debtor filed a Motion to Fix an Administrative Bar Date. That Motion was granted and an Administrative Bar Date was set for 11/15/2021.

The Debtor's landlord, Snowden Investor, LLC ("Snowden" or the "Landlord") and secured creditor, EagleBank, disputed the amount of funds held by the Debtor that were subject to the EagleBank's lien. Snowden and EagleBankhave agreed that Eagle's cash collateral is limited to $112,363.93[1]. Upon entry of an Order confirming this Plan, EagleBank shall be empowered to offset its secured claim against the amounts currently on deposit with EagleBank. The balance of funds on deposit with EagleBank, less $100 representing the funds received by the Trustee for the sale of the Intellectual Property, approximately $92,500[2], will be transferred to the Subchapter V Trustee for distribution under the plan. In an effort to facilitate a resolution of the dispute with Snowden, EagleBank has agreed to provide a carve-out of $5,000 to pay a portion of the Subchapter V Trustee's fees in this matter. This will result in a total payment from EagleBank to the Trustee of approximately $97,500.

Coupled with the funds maintained by the Trustee, this provides approximately $177,850 for payment of allowed unpaid administrative claims which are comprised of:

1. The allowed administrative claim of the Snowden in the amount of $213,140.58, as established by Order of this Court on January 22, 2022 [Docket No. 188].

2. The estimated fees of the Subchapter V Trustee.In support of a resolution of the dispute between Snowden and EagleBank, the Trustee has agreed to cap her fees at $10,000.

---

[1] EagleBank asserted a lien on all funds held at Howard Bank and certain funds were transferred to EagleBank. Upon objection of Snowden, a determination was made that Eagle's lien was not secured by all deposits at Howard Bank. Snowden, EagleBank and the Trustee obtained historical account statements and were able to determine that, of funds transferred to EagleBank, $112,363.93, were the proceeds of EagleBank's cash collateral and therefore EagleBank's lien on those funds is limited to this amount.

The estate is administratively insolvent.

Article V. Classification and Treatment of Claims and Interests

1. The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2. Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3. <u>Disputed Claims</u>:
    a. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:
        i. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or
        ii. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.
    b. <u>Delay of Distribution on a Disputed Claim</u>: No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.
    c. <u>Settlement of Disputed Claims</u>: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

Article VI. Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on Appendix B, funds received by the Trustee or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1. Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3. All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**. The claims of Allegient Partners [POC 6] and Pawnee Leasing [POC 1] were secured by specific assets. Allegient Partners and Pawnee Leasing agreed to allow their collateral to be sold during the liquidation of the Debtor's personal property. The secured claims of these parties were paid from the proceeds of the sale. See Trustee's Report of Sale [Docket No. 151] The claim of TBF Financial LLC [POC 18 – filed 3/15/22] was secured by equipment referred to as an Adrenelator.

3

    This equipment was offered for sale during the liquidationhowever it was not sold. No distributions are anticipated on this claim.

4.  After payment of the foregoing claims, sums received by the Trustee shall be paid, on a pro-rata basis, to allowed general unsecured claims. As stated above, the estate is administratively insolvent. No payments are anticipated on unsecured claims.

  a. Payment on the allowed administrative claim of the Landlord shall be made no later than 5 days after the entry of a non-appealable Order confirming this Plan.

  b. Payment on the allowed administrative claim of the Trustee shall be made no later than 5 days the entry of a non-appealable Order allowing her fees, an application for which has not yet been filed.

Article VII. Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in theproperty, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

Article VIII.Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to ArticleIV of this Plan. All fees and expenses requested by the Trustee, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. The Trustee has agreed to limit her fee request to $10,000

Article IX.Attorney Compensation

The Debtor's attorney, Robert L Kline, III, 5 Public Square, Suite 200, Hagerstown, MD 21740 shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan. All fees and expenses requested by the Debtor's attorney, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.  It is understood that Debtor's attorney will not be seeking any further compensation in excess of the initial retainer amount by the Debtor at the initiation of this case. An Order approving these fees was entered 12/6/2021 [Docket 131].

Article X. Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

Article XI. Debtor's Disposable Income and Plan Funding

There is no exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan. As noted herein, payments under the Plan will be made from funds held by the Trustee and EagleBank and proceeds from the sale of the Intellectual Property

Article XII. Executory Contracts and Unexpired Leases

12.01 Assumption. Due to the nature of the plan and sale of the Debtor's assets there are no executory contracts to be assumed.

12.02. Rejection. Due to the nature of the plan and sale of the Debtor's assets all executory contracts are hereby rejected.

A proof of claim arising from the rejection of an executory contract or an unexpired lease under the Plan must be filed with the Court and served on the Trustee and the Debtor no later than 30 days after the Effective Date.

Article XIII. Property Vests in Debtor Free and Clear

There remain no assets of the Debtor other than the cash held by the Trustee or EagleBank. By agreement of the parties, after set-off by EagleBank for the agreed collateral balance, all remaining funds will be transferred to the Trustee for distribution under the Plan.

Article XIV. Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

Article XV. Discharge

In accordance with Section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt as this is a Liquidating Plan.

Article XVI. Miscellaneous

16.01 Definitions and Rules of Construction. The definitions and rules of constructionset forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Codeare used in this Plan, and they are supplemented by the following definitions:

16.02 Effective Date of Plan. The effective date of this Plan is the first business dayfollowing the date that is fourteen days after the entry of the order of confirmation. If, however,a stayof the confirmation order is in effect on that date, the effective date will be the firstbusiness day after the date on which the stay of the confirmation order expires or is otherwiseterminated.

16.03 Severability. If any provision in this Plan is determined to be unenforceable, thedetermination will in no way limit or affect the enforceability and operative effect of any otherprovision of this Plan.

16.04 Binding Effect. The rights and obligations of any entity named or referred to inthisPlan will be binding upon, and will inure to the benefit of, the successors or assigns of suchentity.

16.05 Appendices. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

16.06 Captions. The headings contained in this Plan are for convenience of referenceonly and do not affect the meaning or interpretation of this Plan.

16.07 Controlling Effect. Unless a rule of law or procedure is supplied by federal law(including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executedinconnection with this Plan, except as otherwise provided in this Plan.

Article XVII. Plan Proposed in Good Faith

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

Article XVIII. Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by§ 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or

confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

DATED: April 29, 2022

                                          /s/ Dawn Alexander,
                                          Debtor
                                          Dawn Alexander, President
                                          Algits, Incorporated

Dated: April 29, 2022

                                          /s/ Robert L. Kline, III
                                          Robert L. Kline, III, #4357
                                          5 Public Square, Suite 200
                                          Hagerstown, MD 21740
                                          240 347 4944
                                          klinelawgroupllc@gmail.com

Certificate of Service

I hereby certify that on April 29, 2022 a copy of the foregoing was mailed, postage prepaid, U.S. Mail to all parties listed on the Creditor Matrix for the debtor and that an electronic copy of the foregoing will be served electronically by the Court's CM/ECF system on the following:

- **Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
- **Robert L. Kline**   klinelawgroupllc@gmail.com
- **Craig Palik**   cpalik@mhlawyers.com, dmoorehead@mhlawyers.com;cpalik@ecf.inforuptcy.com;kolivercross@mhlawyers.com
- **Kristen B. Perry**   kperry@howardcountymd.gov
- **Joseph Michael Selba**   JSelba@tydingslaw.com, jselba@tydings.com
- **Angela L. Shortall**   ashortall@3cubed-as.com, md70@ecfcbis.com
- **Adam M. Spence**   adam@spencefirm.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV

- **Christopher S. Young** cyoung@btlg.us, sphillips@btlg.us;hconnolly@btlg.us;edonohue@btlg.us;hyeung@btlg.us;klohmeyer@btlg.us

                                      <u>/s/ Robert L Kline, III</u>

                                      Robert L Kline, III

- **Christopher S. Young** cyoung@btlg.us, sphillips@btlg.us;hconnolly@btlg.us;edonohue@btlg.us;hyeung@btlg.us;klohmeyer@btlg.us

                                      <u>/s/ Robert L Kline, III</u>

                                      Robert L Kline, III

**Appendix A**

(Debtor's Business History)

A. Nature and History of the Debtor's Business or Commercial Activities:

Debtor operated a Ninja warrior style experience for all ages. The Debtor offered programs for all ages and abilities. The Debtor offered the experience for a one-time fee (per visit) and also offered memberships billed on a monthly basis. The Debtor has ceased all operations.

B. Ownership Structure of the Debtor's Business or Commercial Activities:

Dawn Alexander, the Debtor's President, is the 100% owner of the Debtor.

C. Description of the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:

The Debtor started the business in 2017. From its opening in 2017 through March 2020 (pre-COVID) the Debtor was able to pay its bills and obligations as and when they came due. After the State of Maryland shutdown due to COVID, the Debtor fell into default with the Landlord and other vendors/leasing companies/banks due to lack of revenue. Debtor and Landlord were unable to come to an agreement on a requested a rent reduction during the period of time that the Debtor was forced to close during the COVID-19 state of emergency issued by the Governor of the State of Maryland. The catastrophic decrease in revenue with the same expenses during the forced shutdown of operations resulted in the Debtor seeking bankruptcy relief.

The Debtor has ceased operations and liquidated all disclosed assets of known liquidation value.

D. Other Pertinent or Miscellaneous Information

Although Notice of the Application for Administrative Expense of Snowden Investors was properly mailed to the address of record for the Debtor, and its corporate representative, the Debtor did not receive the Application within a time frame that would have allowed it to object to the relief sought. The Debtor would have asserted that there was a defect in the amount of square footage in the lease and rental increases impacting the rental amount due. See case number C-13-CV-21-000241.

**Appendix B**

(Classification and Treatment of Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery |
|---|---|---|---|---|
| 1 | Administrative Expense Claims | 2 | | |
| | Snowden Investors LLC ($213,140) post-petition rent, to be paid within five (5) days of a non-appealable order confirming the Plan | | Impaired | approx. 79% |
| | Angela Shortall, Subchtr V Trustee ($10,000) To be paid within five (5) days of a non-appealable order allowing fees. | | Payment in full | 100% |
| 2 | Secured Creditors (Blanket Liens) | 7 | | |
| | EagleBank (approx. $112,464) | | Payment in full[1] | 100% |
| | Howard County Economic Development Authority – blanket lienholder | | Impaired | 0% |
| | CIT Bank, NA – blanket lienholder (disputed) | | Impaired | 0% |
| | Small Business Administration – blanket lienholder | | Impaired | 0% |
| | Maryland Small Business Development Financing Authority – blanket lienholder | | Impaired | 0% |
| | Time Payment | | Impaired | 0% |
| | Honda | | Not Impaired [2] | 0% |
| 3 | Secured Creditors (Specific Assets) | 3 | | |
| | Pawnee Leasing (approx $10,000) PMSI equipment – sale generated revenue for equipment in excess of allowed claim. | | Payment in full (Paid from sale of collateral) | 100% |

10

|  | Allegiant Partners, Inc. (approx $31,000) PMSI equipment – sale generated less than amount owed |  | Impaired Net proceeds - $5,865 (Paid from sale of collateral) | Approx 19% |
|---|---|---|---|---|
|  | TBF Financial, LLC (approx $59,000) Equipment Finance Agreement - Collateral not liquidated |  | Impaired Collateral offered for sale at auction; Collateral was not sold | 0% |

| 4 | Priority Creditors | 2 |  |  |
|---|---|---|---|---|
|  | IRS |  | Impaired | 0% |
|  | Comptroller |  | Impaired | 0% |

| 5 | General Unsecured Claims (To include all scheduled and filed unsecured claims, claim of TBF Financial, LLC, and unsecured balance of claim of Allegient Partners | 63 | Impaired | 0% |
|---|---|---|---|---|

(1) Payment of the claim of EagleBank in this proceeding is without prejudice to any other claims it has against the individual guarantors, or the property located on Brady Court held in the name of one or more of the individual guarantors.

(2) Debt scheduled in error; vehicle was owned by partner of former principal and debt wassatisfied outside of that party outside of the Plan.

11

**Appendix C**

(Claims Being Modified Under Section 1190(3))

    None

**Appendix D**

    (Liquidation Analysis)

The Plan proposed is a liquidating plan. All assets of the Debtor have been liquidated, leaving cash of $285,281, all of which will be distributed to creditors under the Plan.